[Cite as *State v. Garfield*, 2011-Ohio-2606.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 09CA009741 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWARD MILLER GARFIELD | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 05CR068734 |

DECISION AND JOURNAL ENTRY

Dated: May 31, 2011

---

MOORE, Judge.

{¶1}   Appellant, Edward Garfield, appeals from the judgment of the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}   On September 7, 2005, the Lorain County Grand Jury indicted Mr. Garfield on one count of rape of a victim younger than 13 years of age in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree.

{¶3}   From August 24, 2009, through August 28, 2009, the case was tried to a jury.  On August 28, 2009, the jury returned a verdict of guilty.  On November 25, 2009, the trial court sentenced him to life imprisonment and notified him of his classification as a Tier III sex offender.

{¶4}   Mr. Garfield timely filed a notice of appeal.  He raises ten assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

"THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING BEYOND A REASONABLE DOUBT THAT [MR. GARFIELD] WAS GUILTY OF RAPE."

## ASSIGNMENT OF ERROR II

"[MR. GARFIELD'S] RAPE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶5}    In his first and second assignments of error, Mr. Garfield contends that that his conviction for rape is supported by insufficient evidence and is against the manifest weight of the evidence.  Specifically, Mr. Garfield contends that his conviction is against the manifest weight of the evidence because there is no physical evidence, E.B.'s testimony was unreliable, the forensic interview was conducted improperly and suggestively, and his wife and brother-in-law were more credible than E.B. and C.F.  We do not agree.

{¶6}    Mr. Garfield's argument with respect to sufficiency is based on the credibility of various witnesses, particularly the victim.  Because an examination of the sufficiency of the evidence requires this Court to view the evidence in the light most favorable to the State, *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, credibility is not implicated.  Accordingly, we review his first and second assignments of error to determine if his conviction is against the manifest weight of the evidence.

{¶7}    A determination of whether a conviction is against the manifest weight of the evidence does not permit this court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion.  *State v. Love*, 9th Dist. No. 21654, 2004–Ohio–1422, at ¶11.  Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.

> "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * * The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b).

"Sexual conduct" is defined to include, among other things, "cunnilingus between persons regardless of sex[.]" R.C. 2907.01(A).

{¶8} E.B., born February 26, 1997, first came in contact with Mr. Garfield when she began kindergarten. He drove her school bus. Beginning around the summer of 2004, E.B.'s mother became employed part-time. E.B.'s mother, Mr. Garfield, and his wife, Christine Garfield, agreed that the Garfields would babysit for E.B. and her older brother, C.F. At the time, C.F. was 11 years old. At the time of trial in 2009, E.B. was 12 years old.

{¶9} Despite mathematical impossibility, E.B. testified that Mr. Garfield began performing oral sex on her while babysitting when she was six years old. Although she was clearly seven years old when the incidents occurred, E.B. insisted repeatedly that the sexual abuse began when she was six years old and ended when she was seven years old. She testified that the first incident occurred when, immediately after she arrived, he took her upstairs at his townhouse apartment. In the computer room, she noticed a piece of quartz that she liked. Mr. Garfield told her that he would give it to her if she did something for him. He then played a computer file depicting a man performing oral sex on a woman. So E.B. testified that she took

off her pants and panties and he laid her on the floor. He then licked her vagina for a few minutes. She then put her pants back on and he gave her the quartz. They went downstairs and Mr. Garfield was surprised to see that E.B.'s mother was still at the apartment. At that time, he also gave C.F. a piece of quartz.

{¶10} E.B. testified that similar events happened almost every time that he babysat her with the exception of the rare occasions that his wife was home. She also testified that he sometimes used a stopwatch that he would set for five minutes, stopping after the time expired. She testified that he used the stopwatch on at least one occasion when C.F. was outside playing with friends. He sometimes played a "game" with her in which he would have her disrobe and stand or sit in the bedroom closet for 15-20 minutes and afterwards he would perform oral sex on her. She testified that if she was not quiet, he would make her wait longer in the closet. He played this "game" with her between four and five times. He also "helped" her study spelling. She lay down and spelled words. When she made a mistake he made her pull her pants down in increments. If they came all the way off, then he would perform oral sex on her.

{¶11} E.B. testified that at various times, he told her that "this is our little secret, don't tell your mom, don't tell your brother[.]"

{¶12} She also recounted an incident the night before the Garfields and Mrs. Garfield's brother, James Tisler, took her to the Great Lakes Medieval Faire on a Saturday. E.B. and Tisler spent the night at the Garfields' apartment the night before traveling to the event because the group wanted to leave early in the morning. E.B. testified that on Friday night, when Mrs. Garfield and her brother went out to pick up chicken for dinner, Mr. Garfield made her lie down and take her pants off. He then performed oral sex on her.

**{¶13}** After the summer ended, he babysat for the children much less often. E.B. stated that the incidents continued but this time they occurred in her mother's apartment, where he had now begun babysitting. E.B. also testified that when her family moved from the apartment she promised that she would tell him the location of her new home but she crossed her fingers behind her back. She never told him the new location. Late in the fall, however, C.F. realized that he left some DVDs at the Garfields' apartment. Upon hearing that they would have to return to the Garfields', E.B. broke down and started crying uncontrollably, saying that she could not go back to the apartment. C.F. had to contact their mother because he could not calm E.B. When their mother arrived, E.B. told her that Mr. Garfield "was touching [her] in wrong places."

**{¶14}** On cross-examination, E.B. admitted that she never told the police about the spelling "game" because she did not believe it to be "relevant" until she discussed the case with the prosecutor. In explaining why she did not complain at the time, E.B. stated that, "At the time, it was sort of like I was being brainwashed. He seemed like a nice guy. He seemed like a good guy. As far as I knew, it was normal."

**{¶15}** On re-direct examination, E.B. testified to frequently viewing Law & Order: Special Victims Unit, a television show that frequently involves sexual crimes.

**{¶16}** Jane Robertson, a manager at Lorain County Children's Services with extensive training regarding sexual abuse, testified regarding child sexual abuse and delayed disclosure. She testified that delayed disclosure is extremely common in child-sex-abuse cases. This is because children are taught to listen to adults and abusers often threaten, bribe, and coerce children in an effort to avoid disclosure. As a result, abused children are frequently afraid adults will not believe them because it becomes a question of whom to believe: the child or the abuser. Children also have difficulty discerning right versus wrong in these situations. Children need a

feeling of safety to disclose sexual abuse and this feeling of safety can come from the knowledge that they will no longer come in contact with the abuser. Robertson further testified that physical exams are not typically employed in delayed disclosure cases unless penetration has occurred or an instrument was used in the abuse. In cases limited to oral sex, exams are typically not employed and this type of abuse rarely leads to physical evidence, especially in cases of delayed disclosure.

{¶17} On cross-examination she stated several factors that should be considered in attempting to confirm abuse, including: secrecy; "the delayed disclosure; who the perpetrator is; the details of the disclosure; how detailed; how much did they remember; did they remember dates; did they remember time frames; did they remember what the person looked like; what -- any identifying information on that person, a birthmark that no one else would have seen[.]" Investigators should look for consistency in details, as well as consistency with things that a child of that age should know. She also admitted that she was not familiar with any of the details of this case.

{¶18} Detective Eric van Kerkhove also testified in the State's behalf. On February 4, 2005, he began investigating this case. He testified that the events took place during the summer of 2004 and that E.B. was seven years old at the time. He also acknowledged that E.B. never told him about the stopwatch, the closet "game," or the spelling "help" to which she testified. He explained that there was no physical evidence due to the delayed disclosure and because the abuse did not include penetration.

{¶19} During the detective's testimony, the State also played a video of the detective and a Children's Services worker interviewing E.B. During the interview she appears generally confident and outgoing, to the point that she demands that the detective turn off his personal tape

recorder. She then removed the cassette. She identified what "private touches" are and the parts of the body that constitute private touches, including the breasts, buttocks and vagina. She also circled the male and female private areas on two pictures. She stated that Mr. Garfield gave her private touches. When she was asked to explain his private touches further she hid under the table. She indicated that he licked her and pointed to the vagina and buttocks of the female picture. She also stated that she licked him and she pointed to the penis. She then said that it tastes "icky." She described his yo-yo, her word for penis, as soft and stated that "white stuff" comes out of it. After repeated prodding, she says that the "white stuff" felt gooey. She explained that the events occurred upstairs, that C.F. was always outside when the events occurred, and that Mrs. Garfield worked so she was rarely home. She also indicated that he did not stop when she asked him to do so. E.B. explained that he instructed her not to tell her mom or she would not be allowed to see him anymore. She also explained that she did not report the abuse to her mother because she was afraid that her mom would not like her afterward.

{¶20} The video included statements of E.B. from which a reasonable inference can be drawn that she had been previously interviewed. When E.B. was asked where she attends school, she responded that the Children's Services worker should have known the answer to that question. Additionally, at the end of the interview, the Children's Services worker broached the subject of E.B.'s pet rabbit and the fact that her family was building the rabbit a "condo." From the context of the discussion, it is clear that the Children's Services worker already knew about the rabbit.

{¶21} Mr. Garfield presented three witnesses in his defense: his wife, his brother-in-law and Jolie Brams, Ph.D. Christine Garfield testified that she and her husband began babysitting for E.B. and C.F. during the summer of 2004. During June, the babysitting took place at E.B.

and C.F.'s home, but due to the heat and the fact that the Garfields' apartment had air conditioning, they began babysitting at their apartment. Their babysitting duties consisted of making sure that the children each took a bath and that someone helped E.B. rinse conditioner out of her hair. E.B. and C.F. were to bathe twice per week. E.B. was unable to work the spigot so Mr. Garfield would draw a bath for her and then she would undress and bathe by herself until she was ready to rinse the conditioner out of her hair. At that time, she always specifically called for Mr. Garfield. Mrs. Garfield further testified that she was home every day and that she was always in the computer room during bath time. The computer room is directly across the hall from the bathroom, five or six feet away. She also stated that when school started in the fall, Mr. Garfield sometimes tutored E.B. in English and reading. Finally, she testified that she and Mr. Garfield each own a wristwatch and that he has an old stopwatch but it had never worked, was not digital, and could not be used as a timer. She also testified that C.F. was a "tv-aholic" and virtually never left the apartment. She stated that the only time she knew of him venturing outside of the apartment was to talk to a girl in the apartment complex. However, she testified that the conversation was short-lived because the girl already had a boyfriend.

{¶22} On cross-examination she admitted that she worked from 11 a.m. until 8 p.m. and that babysitting took place from 5 p.m. until 10 or 10:30 p.m. On re-direct examination she testified that she did not leave the apartment to get food during the evening before the trip to the Great Lakes Medieval Faire.

{¶23} James Tisler, Mrs. Garfield's brother, also testified. He stated that E.B. seemed outgoing, confident, and happy. Further, he stated that he arrived on the morning of the Faire, rather than on Friday night.

{¶24} Mr. Garfield's final witness was Jolie Brams, Ph.D., a licensed psychologist with significant experience counseling sexual abuse victims and consulting in legal matters. Dr. Brams testified that the timing of disclosure in sexual abuse is important because memory, being fluid and malleable, can be influenced by others. In typical cases, the child has spoken to several people prior to providing a forensic statement. The number of prior interviews has a significant impact on the accuracy of their statements. Additionally, people tend to enhance memories over time. These enhancements can stem from many sources such as things said by family, television programs, and peer influence. She also testified that seven-year-old children do not have the cognitive capacity to use the word "relevant" or, especially in relation to sexual abuse, to make a determination regarding the relevance of various details. Children often report abuse but name an individual other than the actual perpetrator because they are crying out for help but remain afraid of the consequences. Also, once a perpetrator has been identified inaccurately it is socially difficult to alter the statement to identify the actual abuser.

{¶25} Dr. Brams also testified regarding the forensic interview that was presented by videotape to the jury. She indicated the following concerns about the forensic interview process in this case: 1) the core of the interview involved the detective asking E.B. to confirm statements rather than answer open-ended questions; 2) the Children's Services employee was present and pre-interviews had obviously taken place; and 3) the detective obviously wanted E.B. to make certain statements and he eventually elicited them by repeating the questions. Dr. Brams also noted certain inconsistencies in E.B.'s behavior during the interview. For example, E.B. was so confident that she demanded that the detective stop his tape recorder and she then physically removed the cassette. However, when discussing details related to the incidents, she hid. She was also oppositional; at one point informing the detective that she would answer two more

questions before terminating the interview. Finally, there were significant differences between E.B.'s demeanor and verbalizations. Most importantly, it was significant that while discussing difficult issues regarding the sexual abuse accusations, E.B. was drawing a picture depicting a smiling Mr. Garfield.

{¶26} After the defense rested, the State called C.F. as a rebuttal witness. C.F. testified that he was 11 years old during the summer of 2004. He stated the Mr. Garfield never watched them at their apartment. He also testified that although he watched a significant amount of television, he made some friends in the Garfields' apartment complex, including a girlfriend, and spent time outside. He also testified that Mr. Garfield and E.B. would disappear upstairs alone for long periods of time, sometimes as much as two hours.

{¶27} Mr. Garfield is correct that no physical evidence implicates him. However, given the nature of the offenses and the delayed disclosure, testimony indicated that physical evidence was unlikely to exist. Moreover, "there is no requirement, statutory or otherwise, that a victim's testimony be corroborated as a condition precedent to a conviction." *State v. Adams,* 9th Dist. No. 05CA008685, 2005-Ohio-4360, at ¶13, citing *State v. Sklenar* (1991), 71 Ohio App.3d 444, 448. Mr. Garfield also contended that E.B.'s testimony was contradicted by Mrs. Garfield and her brother. Dr. Bram's testimony questioned the validity of E.B.'s testimony as well as the contents of the forensic interview. Mrs. Garfield's testimony was in many ways contradicted by C.F.'s testimony. E.B. clearly testified, however, that on numerous occasions during the summer of 2004 Mr. Garfield performed oral sex on her. Although E.B. was confused about her actual age, it is a mathematical fact that E.B. was seven years old at the time of the incidents. "The weight to be given the evidence and the credibility of the witness[es] are primarily for the trier of the facts[,]" in this case, the jury. *State v. Jackson* (1993), 86 Ohio App.3d 29, 32, citing *State v.*

*Richey* (1992), 64 Ohio St.3d 353, 363. The issue of whether E.B.'s testimony was coached, as Mr. Garfield contends, was, therefore, one for the jury. After reviewing the entire record, weighing the inferences and examining the credibility of the witnesses, we cannot say that the jury in finding Mr. Garfield guilty of rape of a child less than 13 years old created a manifest miscarriage of justice. *Otten*, 33 Ohio App.3d at 340.

**{¶28}** Accordingly, Mr. Garfield's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

"THE TRIAL COURT ERRED IN ADMITTING THE DVD INTO EVIDENCE."

**{¶29}** In his third assignment of error, Mr. Garfield contends that the trial court erred in admitting the DVD recording of the forensic interview of E.B. into evidence. We do not agree.

**{¶30}** Mr. Garfield provides two reasons why the trial court should not have admitted the recording of E.B.'s forensic interview into evidence. The first is that the DVD "was never listed as an exhibit, even when the State updated discovery prior to trial." Mr. Garfield, however, provides no citation to authority in support of this contention. App.R. 16(A)(7). The State correctly argues that the DVD was provided in pre-trial discovery and that the interview participants were all disclosed as potential witnesses. He did not identify, nor did this Court find, any order or local rule from the trial court requiring the submission of exhibit lists. Moreover, the testimony from his expert witness, Dr. Brams, demonstrates that she had ample opportunity to review and testify about the contents of the DVD. He did not contend on appeal that the DVD was not timely disclosed during discovery. Accordingly, error, if any, with respect to the State's failure to list the DVD as an exhibit is harmless. Crim.R. 52(A).

**{¶31}** The second basis for his contention that the DVD should have been excluded from the trial is founded upon Evid.R. 403. Mr. Garfield contends that the trial court failed to

conduct a balancing test to determine "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). We do not address the merits of this contention, however, because he has forfeited the argument based upon Evid.R. 403(A) and did not argue plain error on appeal.

{¶32} Evid.R. 103(A)(1) provides that an objection to the admission of evidence must include the specific ground of the objection unless it is apparent from the context. This Court "need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated in part on other grounds *Williams v. Ohio* (1978), 438 U.S. 911. The failure to timely lodge an objection forfeits the issue for appellate review. *State v. Gray*, 9th Dist. No. 08CA0057, 2009-Ohio-3165, at ¶7. A forfeited objection may form the basis of a plain-error argument. Id., citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶23. This Court generally will not, however, undertake a plain-error analysis when the appellant has failed to assert such an argument in his brief. See *State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶11.

{¶33} At trial, Mr. Garfield's challenge to the admissibility of the DVD was based upon its absence from an exhibit list and its failure to satisfy the business record exception to Evid.R. 802. he did not argue that the probative value of the forensic interview was substantially outweighed by concerns of unfair prejudice, confusion of the issues or of misleading the jury under Evid.R. 403(A). For these reasons, he forfeited his argument based on Evid.R. 403(A). *Gray* at ¶7. He did not argue plain error and we will not create a plain-error argument on his behalf. *Hairston* at ¶11.

**{¶34}** Accordingly, Mr. Garfield's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

"THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE A SURPRISE WITNESS DURING THE COURSE OF TRIAL WHO WAS NOT LISTED IN PRE-TRIAL DISCOVERY AND WHO DRAMATICALLY UNDERMINED [MR. GARFIELD'S] PROFFERED DEFENSE. THIS DENIED [HIM] DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS."

**{¶35}** In his fourth assignment of error, Mr. Garfield contends that the trial court erred in permitting the State to introduce a surprise witness during the course of trial who was not listed in pre-trial discovery and who dramatically undermined his proffered defense. We do not agree.

**{¶36}** "The philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial. The state should furnish upon a proper demand the names of all witnesses it reasonably anticipates it is likely to call, whether in its case-in-chief or in rebuttal." *State v. Howard* (1978), 56 Ohio St.2d 328, 333.

**{¶37}** At the time of trial, Crim.R. 16(E)(3), which governs the regulation of discovery, provided the following:

"Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

**{¶38}** The trial court has discretion to determine what sanction to impose for a violation of Crim.R. 16(E)(3). *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107. Accordingly, we review a trial court's decision to impose or forego sanctions for an abuse of discretion. *State v. Jackson*, 9th Dist. No. 24650, 2009-Ohio-4863, at ¶13. Under this standard, we must determine whether

the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621.

{¶39} In this case, the State attempted to call C.F., E.B.'s brother, as its first witness in its case-in-chief. The State neglected, however, to disclose C.F. in its pre-trial discovery. Mr. Garfield objected and the State realized that it had inadvertently failed to disclose C.F. as a potential witness. The trial court noticed that C.F. had been subpoenaed but not listed as a witness. The prosecutor stated that "Actually, I will not at this point call him. * * * I'm going to try to do some last minute supplemental discovery, if I could." The State chose instead to begin presentation of its case by calling E.B. to testify. After the State rested and the defense presented its case, the State attempted to call C.F. on rebuttal to specifically rebut the testimony of Garfield's wife as to C.F.'s activities while at the Garfields' home, as well as her absence during bath time. The trial court specifically limited C.F.'s testimony, telling the prosecutor that "you'll limit it to issues of rebuttal." C.F. testified in rebuttal two days after the State attempted to call him to testify in the State's case-in-chief.

{¶40} In light of the fact that the defense had two-days' notice before C.F. actually testified, that the subpoena provided some notice of his appearance at trial, and that the court limited his testimony to rebuttal only, we cannot say that the trial court abused its discretion. *Blakemore*, 5 Ohio St.3d at 219. Additionally, the defense did not ask for a continuance of trial to prepare for this witness; instead it sought only exclusion, the most serious sanction. See *Finnerty*, 45 Ohio St.3d at 107. Mr. Garfield contends that if his counsel had been given additional time to prepare for C.F.'s testimony, then his counsel could have secured the DVD

recording of C.F.'s interview with the Child Advocacy Center for cross-examination purposes. Garfield has not directed this Court to any portion of the record that suggests C.F. was interviewed by the Child Advocacy Center and this Court, having reviewed the entire transcript of proceedings, as well as the full contents of the court docket for this case, has likewise failed to find any reference to such an interview. We cannot conclude that this ruling significantly hampered counsel's ability to cross-examine C.F.

{¶41} Accordingly, Mr. Garfield's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

"THE TRIAL COURT ERRED IN RULING THAT THE TESTIMONY OF CHRISTINE GARFIELD WAS HEARSAY."

{¶42} In his fifth assignment of error, Mr. Garfield contends that the trial court erred in ruling that his wife's testimony was hearsay.

{¶43} During the direct examination of Mrs. Garfield, counsel attempted to elicit statements made by E.B.'s mother to Mrs. Garfield during a phone call. The State objected and the court sustained the objection. Mr. Garfield now contends that the trial court should have admitted his wife's statements. Because he failed to preserve this issue for appellate review and failed to argue plain error, we do not reach the merits of this assignment of error.

{¶44} Evid.R. 103(A)(2) provides that:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination."

In *State v. Henderson*, 2d Dist. No. 19445, 2003-Ohio-312, the Second District Court of Appeals applied Evid.R. 103(A)(2) to hold that a defendant waived (forfeited) for purposes of appeal the

argument that a witness' testimony should have been admitted. Id. at ¶33. The basis for the court's decision was that Henderson failed to make a proffer to the trial court regarding the substance of the testimony. Id. As noted above, the failure to properly preserve an evidentiary issue under Evid.R. 103 forfeits the issue for appellate review. See *Gray* at ¶7. A failure of preservation does not, however, foreclose plain-error review. Id., citing *Payne* at ¶23; Evid.R. 103(D).

{¶45} Mr. Garfield failed to proffer the testimony that his wife would have provided had the court allowed her to answer counsel's question. On appeal, he now attempts to proffer the testimony and explain its purpose. He cannot circumvent Evid.R. 103 in this manner. As above, he has not argued plain error and we will not construct such an argument for him. See *Hairston* at ¶11.

{¶46} Accordingly, Mr. Garfield's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

"THE TRIAL COURT ERRED IN ALLOWING THE DATES IN THE INDICTMENT AND BILL OF PARTICULARS TO BE AMENDED DURING TRIAL."

{¶47} In his sixth assignment of error, Mr. Garfield contends that that trial court erred in allowing the State to amend the dates in the indictment and bill of particulars during trial. We do not agree.

{¶48} With respect to amendment of the indictment and bill of particulars, Crim.R. 7(D) provides as follows:

> "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made * * * to cure a variance between the indictment * * * and the proof, the defendant is entitled to a discharge of the jury

on the defendant's motion * * * and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance. * * * [N]o appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted."

A bill of particulars, however, can be amended at any time subject only "to such conditions as justice requires." Crim.R. 7(E). Generally, an indictment need not set forth precise dates and times. *State v. Sellards* (1985), 17 Ohio St.3d 169, 171. Frequently in instances of abuse spread out over long periods of time young children are unable to remember, and thus the State cannot supply, exact times and dates. *State v. Smith* (Dec. 30, 1991), 12th Dist. No. CA91-06-104, at *3. "[A]bsent material detriment to the preparation of a defense, the omission of specific dates and times is without prejudice, and without constitutional consequence." *State v. Barnecut* (1988), 44 Ohio App.3d 149, 151.

{¶49} At the close of the State's case the prosecutor moved to amend the bill of particulars and the indictment to conform to the evidence regarding the time the offense occurred. The original indictment stated that the rape occurred "on or about June 1, 2004 through July 31, 2004[.]" The court allowed the State to amend the indictment to include "June 1, 2003 to Aug 1, 2004[.]" The original bill of particulars stated that E.B. "was approximately six years old at the time of the incident." The court allowed the State to amend the bill of particulars to state that the victim was "6 or 7 years old." Here, Mr. Garfield did not move for a continuance or to discharge the jury. Instead, he contended that the court "should not [grant the motion] simply because -- to make it look more palatable to the State when their witnesses don't conform to the expected testimony."

{¶50} In *State v. Evans*, 4th Dist. No. 08CA3268, 2010-Ohio-2554, the Fourth District Court of Appeals encountered an analogous situation in which the court allowed the State to

amend the dates in the indictment. Id. at ¶36. The appellate court noted that at all times the defendant was charged with causing the same injury, the amendment merely added an additional period of time during which that injury may have occurred. Id. As occurred here, Evans did not ask for a continuance. Id. at ¶38. For that reason, the appellate court determined that the trial court did not abuse its discretion in allowing the amendment. Id. at ¶36.

{¶51} We, too, conclude that the trial court did not abuse its discretion in allowing the amendment. Each of the State's witnesses, with the exception of the victim, E.B., identified the time period of the offense as the summer of 2004. Mrs. Garfield also testified that the events took place at that time. E.B. testified that she was born in February of 1997. Mathematically speaking, if the events occurred in 2004, E.B. was seven years old at the time. E.B. testified, however, that the events began when she was six and ended "a little bit into seven." The prosecutor repeatedly attempted to have E.B. correct this testimony, going so far as to ask E.B. to count the years from 1997 to 2004. E.B. then agreed that she was seven. The prosecutor then said, "So it would have been, you would have been between six and seven?" and she answered, "Yes." Regardless of the confusion on E.B.'s part, Detective Kerkhove clearly testified that the events occurred during the summer of 2004 and that he began investigating the case in early 2005. Mrs. Garfield testified that they only watched E.B. and C.F. during 2004. C.F. also testified that the events took place in 2004 and that E.B. was seven years old at the time. The evidence that the events took place during the summer of 2004 was overwhelming. In light of this evidence regarding the time frame, Garfield's contention that he was prejudiced by having little time to develop and prove an alibi for 2003 is unavailing. Moreover, the difference between 2003 and 2004 carried no significance with relation to the substance of the charge. Mr. Garfield was charged with raping a victim who was under the age of 13. Whether E.B. was six

or seven is immaterial to the charge. See *Sellards*, 17 Ohio St.3d at 172. His contention that the amendment of the indictment to conform to E.B.'s testimony sent "a message to the jury that the victim's testimony is more credible or more important than the actual facts" is similarly unfounded. If anything, the amendment of the indictment to conform to obviously incorrect testimony from E.B., the victim and the State's most valuable witness, served only to highlight her inconsistency and damage her credibility. Similarly, because the testimony overwhelmingly indicated that he only babysat E.B. in 2004, amending the bill of particulars did not prejudice his ability to present an alibi for 2003 because no testimony was presented that he had any contact with her during that time. For these reasons, we cannot say that the trial court abused its discretion in allowing the State to amend the indictment and bill of particulars. *Blakemore*, 5 Ohio St.3d at 219.

{¶52} Accordingly, Mr. Garfield's sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

"THE TRIAL COURT ERRED IN RULING THAT THE ORIGINAL INDICTMENT WAS INADMISSIBLE."

{¶53} In his seventh assignment of error, Mr. Garfield contends that the trial court erred in ruling that the original indictment and bill of particulars were inadmissible. We do not agree.

{¶54} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Mr. Garfield suggests on appeal that the bill of particulars and original indictment are relevant because they tend to make it more or less probable that E.B.'s testimony was untruthful or had been coached. He does not cite any case law holding that a bill of particulars is admissible evidence under these circumstances. App.R. 16(A)(7).

{¶55} Mr. Garfield never made an attempt to admit the original indictment. Instead, he opposed the State's motion in limine and argued in favor of presenting the original bill of particulars. A court's ruling on a motion in limine does not preserve issues related to evidentiary rulings for appeal. *Gray* at ¶7. A party seeking to admit evidence that was the subject of the opposing party's successful motion in limine must attempt to admit the evidence at trial in order to preserve the issue for appellate review. His contentions are thus forfeited and limited to plain error. Id. He did not argue plain error in this assignment and we will not make such an argument on his behalf. *Hairston* at ¶11.

{¶56} Accordingly, Mr. Garfield's seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR VIII

"[MR. GARFIELD] WAS NOT AFFORDED THE EFFECTIVE ASSI[S]TANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONS[T]ITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶57} In his eighth assignment of error, Mr. Garfield contends that at trial he was prejudiced by ineffective assistance of counsel. On appeal, he presents four bases in support of his contention: 1) trial counsel denied him of his right to testify; 2) trial counsel failed "to make sure any motions to suppress the DVD were settled or addressed before trial[;]" 3) trial counsel made a mockery of him at trial due to his interest in astrology; and 4) trial counsel asked E.B. an inappropriate question during cross-examination. We do not agree.

{¶58} In order to show ineffective assistance of counsel, Mr. Garfield must satisfy a two-prong test. *Strickland v. Washington* (1984), 466 U.S. 668, 669. First, he must show that his trial counsel engaged in a "'substantial violation of any * * * essential duties to his client.'" *State v. Bradley* (1989), 42 Ohio St.3d 136, 141, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396. Second, he must show that his trial counsel's ineffectiveness resulted in prejudice.

*Bradley*, 42 Ohio St.3d at 141-142, quoting *Lytle*, 48 Ohio St.2d at 396-397. "Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel." *State v. Velez*, 9th Dist. No. 06CA008997, 2007-Ohio-5122, at ¶37, citing *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus. This Court need not address both *Strickland* prongs if he fails to prove either one. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶10.

{¶59} Mr. Garfield contends that trial counsel denied him of his right to testify and that trial counsel failed "to make sure any motions to suppress the DVD were settled or addressed before trial." With respect to his first two contentions in support of a determination that trial counsel was ineffective, we are unable to determine whether trial counsel substantively violated an essential duty or, assuming that a violation occurred, that he was prejudiced as a result. The State correctly contends that any attempt to evaluate these arguments would necessarily require this Court to resort to information outside the record. In the record before us there is no evidence regarding Mr. Garfield's election not to testify; similarly, he has provided no basis upon which a motion to suppress the DVD interview of E.B. could be granted, especially in light of our disposition of his third assignment of error. "[A] direct appeal is not the appropriate context to present evidence outside the record." *State v. Mitchell*, 9th Dist. No. 24730, 2009-Ohio-6950, at ¶20. Instead, these issues are "'more suitable to postconviction relief, where this additional evidence could be presented.'" Id., quoting *State v. Ushry*, 1st Dist. No. C-050740, 2006-Ohio-6287, at ¶43.

{¶60} With respect to Mr. Garfield's contention that trial counsel made a mockery of his interest in astrology, we disagree. On appeal, he cited to but one instance in which counsel took any action related to his interest in astrology. As counsel's first line of voir dire questioning, she

asked many jurors in succession the day and month of their birthdays. The transcript reveals that this questioning was quick and devoid of extraneous details. Counsel made no reference to the thought process behind the question. He further contends that he was prejudiced by counsel's failure to object when the prosecutor cross-examined his wife regarding birthdays. The prosecutor asked, "Does he like, does he have some type of issue with a person's birthday, date of birth, other than their year?" She replied that they study astrology and that it has been a hobby of theirs for some time. While this information may not have been particularly relevant and might technically have been objectionable, he has failed to demonstrate any prejudice flowing from the questions. *Ray* at ¶10.

**{¶61}** Finally, Mr. Garfield contends that trial counsel was ineffective because, while cross-examining E.B. as to why she never screamed or yelled for him to stop, counsel asked, "Did you want him to do that to you?" The State contends that the question constituted a trial tactic because Mr. Garfield's theory of the case was that E.B. fabricated the events. The State suggests that counsel's goal was for E.B. to indirectly impeach herself. We need not delve that deeply into the rationale behind counsel's single question. While perhaps in bad taste and ill-considered, Mr. Garfield has not demonstrated that the lone question resulted in any discernible prejudice, particularly prejudice so severe that the trial outcome would have been different. *Velez* at ¶37.

**{¶62}** Accordingly, Mr. Garfield's eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR IX

"THE TRIAL COURT ERRED IN NOT ALLOWING AN EVALUATION OF THE VICTIM AND EXPERT TESTIMONY."

**{¶63}** In his ninth assignment of error, Mr. Garfield contends that the trial court erred in not granting a motion for an evaluation of the victim and corresponding expert testimony. We do not agree.

**{¶64}** Initially, we observe that the court did allow him to present expert testimony regarding the interview procedures employed in questioning E.B. during the investigation of the underlying events. The court also allowed the expert to advise trial counsel regarding potential cross-examination issues. The question Mr. Garfield actually presents is whether the trial court abused its discretion in ruling that his expert could not independently interview E.B. He did not, however, cite any authority in support of this assignment of error beyond an acknowledgement that we review determinations regarding the admissibility of expert testimony for an abuse of discretion, citing *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 616. App.R. 16(A)(7).

**{¶65}** On August 29, 2008, Mr. Garfield filed a motion for evaluation of E.B., which was combined with a "motion for pre-trial taint hearing to determine reliability of complaining witness' testimony." The motion included several references to law review articles suggesting that the manner of investigation is critical to the validity of child testimony in sexual abuse cases. On November 13, 2008, the State filed a brief in opposition to the motion. On November 21, 2008, the trial court denied the motion on the authority of *State v. Collier* (July 27, 2000), 8th Dist. No. 76433, citing *State v. Boston* (1989), 46 Ohio St.3d 108, and this Court's decision in *State v. Stutts* (Jan. 2, 1991), 9th Dist. No. 90CA004879.

**{¶66}** This Court has held that a trial court "*may*, in its sound discretion, order a prosecuting witness to submit to a psychological examination upon the request of a defendant." *Stutts*, 9th Dist. No. 90CA004879, at *3. However, the *Stutts* Court also observed that these motions carry with them several critical considerations. Id. First, the motions may be used to

intimidate and harass witnesses. Id. Second, "evaluating the victim's credibility through expert testimony is clearly impermissible." Id., citing *Boston*, 46 Ohio St.3d at the syllabus; *State v. Moreland* (1990), 50 Ohio St.3d 58, syllabus. Finally, Ohio's Rape Shield Law, codified in R.C. 2907.02(D) significantly limits the scope of any examination. Id., citing *State v. Tomlinson* (1986), 33 Ohio App.3d 278, 279.

{¶67} Viewing this case through the prism of the considerations identified in *Stutts*, we cannot say that the trial court abused its discretion in denying the motion for a psychological evaluation and hearing regarding pre-trial taint. Mr. Garfield's expert had the opportunity to evaluate the recorded forensic interview of E.B. From E.B.'s answers to questions recorded in the forensic interview, Dr. Brams was able to determine that she had likely been interviewed numerous times previous to the forensic interview. Dr. Brams subsequently testified to the effects that repeated interviews can have on a child victim's recollection. Dr. Brams was also able to identify and describe proper interview guidelines and inform the jury of the instances in the forensic interview that failed to adhere to the guidelines. Dr. Brams was also able to identify and testify to inconsistencies between E.B.'s words and her actions, such as discussing difficult topics while drawing a smiling picture of Mr. Garfield's face. And again, Dr. Brams was available to assist trial counsel in developing questions for cross-examination. In light of the information that Dr. Brams was able to glean from the forensic interview and the resulting aid she was able to provide to the defense, we cannot say that the trial court abused its discretion in denying Mr. Garfield's motion to perform a psychological examination on E.B.

{¶68} Accordingly, Mr. Garfield's ninth assignment of error is overruled.

## ASSIGNMENT OF ERROR X

"THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS DENIED [MR. GARFIELD] A FAIR TRIAL."

{¶69} In his tenth assignment of error, Mr. Garfield contends that the cumulative effect of the trial court's errors denied him a fair trial. We do not agree.

{¶70} To support a claim of cumulative error, there must be multiple instances of harmless error. *State v. Garner* (1995), 74 Ohio St.3d 49, 64. Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco* (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. "'[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Hill* (1996), 75 Ohio St.3d 195, 212, quoting *U.S. v. Hasting* (1983), 461 U.S. 499, 508-09. Moreover, "errors cannot become prejudicial by sheer weight of numbers." *Hill*, 75 Ohio St.3d at 212. After reviewing the record, we cannot say that his trial was plagued with numerous errors or that his constitutional right to a fair trial was violated.

{¶71} Accordingly, Mr. Garfield's tenth assignment of error is overruled.

III.

{¶72} Mr. Garfield's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS

BELFANCE, P. J.
CONCURS, SAYING:

{¶73} I concur; however, I write separately to briefly comment on Mr. Garfield's ninth assignment of error. The trial court noted that "[n]o specialized need in this case has been demonstrated to warrant a psychological evaluation of the alleged victim apart from general concerns about credibility that would attend any case involving minors." As this is an accurate characterization of Mr. Garfield's motion, I cannot say that the trial court abused its discretion. Mr. Garfield's motion was general and broad, comprehensively expressing principles and concerns that can arise in alleged childhood sexual abuse cases. However, Mr. Garfield failed to identify specific facts from the instant case which would evidence a specialized need for a psychological examination. Thus, I agree that the trial court's exercise of its discretion was reasonable in light of the contents of the motion.

APPEARANCES:

JENIFER C. BERKI, Attorney at Law, for Appellant.

DENNIS WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.