[Cite as *State v. Anderson*, 2013-Ohio-2786.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26600 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TINA F. ANDERSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 09 2565 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2013

MOORE, Presiding Judge.

{¶1} Defendant-Appellant, Tina F. Anderson, appeals from her sentence and conviction set forth in the July 16, 2012 judgment entry of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} On the evening of June 4, 2011, a black Jeep Cherokee was seen driving erratically without its headlights on and repeatedly weaving into oncoming lanes of traffic on West Market Street in Akron. Meredith Pavona, a concerned citizen, followed the Jeep and flashed her headlights in order to get the driver's attention, but the driver of the Jeep did not respond. Another concerned citizen pulled up beside the Jeep on the passenger's side and appeared to say something, but the Jeep kept advancing without turning on its headlights. Ms. Pavona then called 911.

{¶3}    Officer Justin Herstich responded to the 911 call and stopped the Jeep at approximately 9:30 p.m. in Fairlawn.  Officer Mark Schlegel also arrived in a separate car as back-up.  The Officers learned that Ms. Anderson was driving the Jeep which was owned by her daughter, Angela Anderson, who was in the front passenger's seat.[1]  Officer Herstich asked Ms. Anderson about her erratic driving and whether she had consumed any alcoholic beverages, illicit drugs or prescribed medication.  Ms. Anderson admitted to taking OxyContin and Xanax earlier that day.  Officer Herstich then had Ms. Anderson perform three field sobriety tests, including the horizontal gaze nystagmus, one-legged stand, and walk-and-turn.  Upon failing all three tests, Ms. Anderson was placed under arrest.

{¶4}    Prior to having the Jeep towed, Officer Schlegel took an inventory of the contents of the vehicle.  In doing so, he found several types of prescription medication inside a blue bag in Ms. Anderson's purse, as well as additional loose pills in the bottom of her purse.  The pill bottles inside of the blue bag had no legible markings on them with regard to patient name, date, or doctor information.  Officer Schlegel testified that Ms. Anderson admitted that the purse and its contents belonged to her.  Further, because Ms. Anderson claimed that she had prescriptions for the pills found in her purse, the police allowed her three months to produce the prescriptions before charging her with possession.  The record indicates that Ms. Anderson failed to produce any prescriptions.

{¶5}    Ms. Anderson was indicted for aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1), possession of drugs, in violation of R.C. 2925.11(A)(C)(2), lanes of travel/weaving, in violation of R.C. 4511.25, lighted lights and illuminating devices required, in violation of R.C. 4513.03, and operating under the influence of alcohol or drugs, in violation of

---

[1] Angela Anderson died prior to trial due to natural, unrelated causes.

R.C. 4511.19(A)(1)(a). The record indicates that Ms. Anderson pleaded not guilty to all charges, and that, prior to trial, the State dismissed the charge of possession of drugs.

{¶6} The matter proceeded to trial and the jury issued a guilty verdict on the charges of aggravated possession of drugs and operating under the influence of alcohol or drugs. Additionally, the trial court found Ms. Anderson guilty of the traffic offenses.

{¶7} Ms. Anderson was sentenced to twenty-four months of community control, a suspended driver's license for a period of one-year, retroactive to May 31, 2012, a three-day driver intervention program, and fines in the amount of $425.00.

{¶8} Ms. Anderson appealed, setting forth one assignment of error for our consideration.

## II.

### ASSIGNMENT OF ERROR

TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHICH SEVERELY DISADVANTAGED HIS CLIENT AND ADVERSELY IMPACTED THE OUTCOME OF THE TRIAL AND BUT FOR HIS POOR PERFORMANCE [MS. ANDERSON] WOULD NOT HAVE BEEN CONVICTED.

{¶9} In her sole assignment of error, Ms. Anderson argues that her trial counsel was ineffective in the following ways: (1) failing to subpoena pharmacy records for Ms. Anderson and her daughter, Angela Anderson, prior to trial, (2) failing to subpoena a pharmacist to authenticate prescription records at trial, (3) failing to adequately cross-examine Officers Herstich and Schlegel, and (4) failing to file a written motion for a new trial based upon newly discovered evidence.

{¶10} To prevail on a claim of ineffective assistance of counsel, Ms. Anderson must show (1) that counsel's performance was deficient to the extent that "counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for counsel's deficient performance the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136, (1989) paragraph two of the syllabus. However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689. Further, to establish prejudice, Ms. Anderson must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id*. at 694.

{¶11}  Here, Ms. Anderson first asserts that trial counsel should have subpoenaed pharmacy records for both herself and her daughter, Angela Anderson, in order to show that valid prescriptions existed for all medications found in the vehicle. However, this argument is pure speculation because it presupposes that these prescriptions actually existed at the time of Ms. Anderson's arrest. "Thus, anything that would support such an assertion would necessarily have to come from outside the record and could not be considered in this appeal." *State v. Brooks*, 9th Dist. No. 26437, 26352, 2013-Ohio-2169, ¶ 19, citing *State v. Garfield,* 9th Dist. No. 09CA009741, 2011-Ohio-2606, ¶ 59. As such, we cannot say that Ms. Anderson's trial counsel performed deficiently in this regard.

{¶12} Next, Ms. Anderson asserts that trial counsel should have subpoenaed a pharmacist to authenticate printouts of her prescriptions that he attempted to submit into evidence at trial. Again, we can only presuppose what a witness may have said if he or she were called to testify about Ms. Anderson's prescriptions at the time of her arrest. However, as stated

above, we cannot consider evidence dehors the record in this appeal. *See Brooks* at ¶ 20. We note that the trial court allowed Ms. Anderson's counsel to use the prescription printouts as an aid to refresh her recollection during testimony. Additionally, Detective David Zampelli testified that, during his investigation, he pulled an OARRS report through the Ohio automated prescription reporting system in order to retrieve Ms. Anderson's full prescription history, and it did not show prescriptions for two of the drugs found in her purse. Therefore, even if we could say that trial counsel performed deficiently by failing to subpoena a pharmacist, Ms. Anderson was not prejudiced because the jury heard the testimony regarding her prescription history through other sources.

{¶13} Ms. Anderson also asserts that trial counsel failed to adequately cross-examine Officers Herstich and Schlegel regarding the location of the drugs in the vehicle. First, she argues that, although Officer Herstich testified about the location of the drugs, he was not the officer who searched the purse, and his testimony was inappropriate hearsay. Second, she argues that there was a discrepancy between the police report and Officer Schlegel's testimony regarding the location of the drugs, and trial counsel only "briefly" questioned Officer Schlegel about this alleged discrepancy. However, the State elicited testimony indicating that Officers Herstich and Schlegel were standing next to each other when Officer Schlegel searched Ms. Anderson's purse, and that Officer Schlegel showed Officer Herstich the contents of the purse. As such, Officer Herstich testified from personal knowledge that the drugs were found in Ms. Anderson's purse. Further, Officer Schlegel clarified, both on direct and cross-examination that, although the police report states that the pills were found in a "blue bag in car," the blue bag was actually inside of Ms. Anderson's purse, which was inside of the car. Trial counsel cross-examined Officer Schlegel on this issue as follows:

* * *

Q. Is this the report that you generated?

A. Yes.

Q. All right. And would you take a look at that paragraph.

A. Yes.

Q. Is it still your testimony that you recovered a blue bag from the purse, or was it somewhere else in the vehicle?

A. No. *It was in the purse*.

* * *

Q. [I]sn't it true [the police report] also states that the blue bag was found in the vehicle? It doesn't say it was in the purse?

A. It said [the blue bag] was in the car, and the *purse obviously is in the car.*

* * *

Q. [T]he blue bag and the pill bottles, you say, are found in the purse; but they are treated differently on the report and on the exhibits?

A. I just put them: In blue bag in car, blue bag in purse. I didn't know at the time if I was going to be finding any other evidence. I had made it to the driver's portion of the vehicle. *But the blue bag was inside the purse.*

* * *

(Emphasis added.) It is clear that trial counsel questioned Officer Schlegel on the issue of the discrepancy and his answer did not change: the pills were found in a blue bag inside of Ms. Anderson's purse. We presume that trial counsel's questioning of the Officers is based upon his sound trial strategy, and, as such, we cannot say that his performance was deficient. *See Strickland* at 689.

{¶14} Finally, Ms. Anderson asserts that, based on newly discovered evidence, trial counsel should have made a request in writing for a new trial. The record indicates that at the close of trial, Ms. Anderson's counsel was handed a copy of a prescription allegedly matching

one of the drugs found in Ms. Anderson's purse. At that time, trial counsel made an oral motion for a new trial, stating, "[s]he handed me a prescription that neither the prosecutor nor myself had seen up until, you know, ten minutes ago, and it was a prescription for one of the pills that was on the BCI report." The judge instructed him as follows:

> Counsel, you will need to file a written motion for new trial, keeping in mind that the standards for the granting of a new trial will have something to do with the nature of the investigation that has been done prior to trial, and not only whether the evidence was, quote/unquote, "newly discovered," but would have been discoverable through normal pretrial efforts.

Once again, the prescription in question is dehors the record and cannot be considered in this appeal. *See Brooks* at ¶ 20. Notwithstanding the foregoing, it is impossible to know whether after further examination, trial counsel might have realized that this prescription could have been obtained through normal discovery efforts prior to trial. Crim.R. 33(A)(6) states that a new trial may be granted on the motion of the defendant "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." As such, trial counsel may have made a strategic decision not to file a written motion for a new trial. Therefore, based upon the limited record before us, we cannot conclude that trial counsel's performance was deficient in this regard.

{¶15} Accordingly, because we cannot conclude that trial counsel's performance was deficient, Ms. Anderson's assignment of error is overruled.

### III.

{¶16} In overruling Ms. Anderson's sole assignment of error, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

CARLA MOORE
FOR THE COURT


WHITMORE, J.
HENSAL, J.
CONCUR.


APPEARANCES:

KAREN H. BROUSE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.