[Cite as *State v Dubose*, 2016-Ohio-7883.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio                                           Court of Appeals No. L-15-1194

       Appellee                                      Trial Court No.  CR0201501380

v.

Bobby C. Dubose                              **DECISION AND JUDGMENT**

       Appellant                                     Decided:   November 23, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and Dexter L. Phillips,
Assistant Prosecuting Attorney, for appellee.

Clayton M. Gerbitz, for appellant.

* * * * *

**JENSEN, P.J.**

**{¶ 1}** Following a jury trial, defendant-appellant, Bobby C. Dubose, appeals the

June 18, 2015 judgment of the Lucas County Court of Common Pleas, convicting him of

two counts of rape.  For the reasons that follow, we affirm.

# I. Background

{¶ 2} On March 3, 2015, Dubose was indicted on three counts of rape, violations of R.C. 2907.02(A)(2) and (B). The facts giving rise to these charges were established at trial as follows.

{¶ 3} On February 22, 2015, 15-year-old S.C. was at Dubose's apartment on Western Avenue in Toledo, Lucas County, Ohio, with her mother and three younger siblings. Dubose, then 23 years old, was dating S.C.'s mother, H.C., and was the father of H.C.'s two youngest children. S.C. was sleeping in the living room with her brother and two sisters when she was awoken by Dubose pulling the covers off of her. Dubose turned S.C. onto her hands and knees, removed her pants, and put his penis in S.C.'s vagina. He stopped, walked away, did something on his phone, then returned and did it again. He then went into his room and lay down.

{¶ 4} S.C. went to the kitchen and called 9-1-1. She waited for the police to arrive, but Dubose awoke because he heard something. He asked S.C. what it was. She said she didn't know, but she could hear that the police had arrived, so she ran into the bathroom, locked the door, and attempted to barricade the door with her feet. Dubose knocked on the door and told her to open it. She yelled for her mother as Dubose tried to break the door down. He finally succeeded, confronted her for calling the police, and punched her in the forehead. The police forcibly entered the apartment and S.C. was transported to St. Vincent Hospital by ambulance. Dubose was transported to Toledo Hospital.

2.

{¶ 5} A sexual assault nurse ("SANE") examined S.C., performed a rape kit, and photographed S.C.'s head wound. She took a number of swabs from her vagina, anus, forehead, and mouth, and collected hair and urine samples. Also collected were S.C.'s underwear and tissues she used to wipe herself after the rape. Meanwhile, at Toledo Hospital, Dubose ultimately consented to a rape kit. A SANE nurse swabbed his mouth, hands, penis, and scrotum.

{¶ 6} S.C. revealed to investigators that the February 22, 2015 incident was not the first time Dubose had raped her. She said he first started raping her when she was 13, the day after Dubose's twenty-first birthday. She said they were living at Eastpointe Apartments in Northwood, Ohio. He pulled her off the couch, took her to her room, put her on the bed, and inserted his penis into her vagina. He also raped her on her fourteenth birthday. At that point they were living on Packard Street in Toledo, Ohio. Again, he pulled her off the couch, turned her around, and inserted his penis into her vagina. S.C. recalled a second incident while they were living on Packard Street. Dubose asked S.C. to help him look for some clothing in the basement. He then made her get on her hands and knees, pulled down her pants, and put his penis in her vagina.

{¶ 7} The Bureau of Criminal Investigation ("BCI") analyzed the rape kits. Semen was identified on the anal samples and vaginal samples taken from S.C. Her underwear and the tissues she used to wipe herself tested presumptive positive for semen. No semen was identified in the oral sample.

3.

**{¶ 8}** BCI performed more extensive DNA testing of S.C.'s vaginal and anal samples and Dubose's penal samples. That testing revealed the presence of both S.C.'s and Dubose's DNA in all three samples. As to the presence of Dubose's DNA in the vaginal and anal samples taken from S.C., BCI calculated the frequency of the population that cannot be excluded as contributors of the DNA to be one in sextillion 478 quintillion unrelated individuals. As to S.C.'s DNA taken from Dubose's penile sample, the frequency was calculated at one in three quadrillion 858 trillion.

**{¶ 9}** The jury convicted Dubose of counts two and three of the indictment. Count one pertained to the incident at Eastpointe Apartments, located in Wood County, thus the trial court dismissed that count of the complaint for lack of jurisdiction. The court sentenced Dubose to a prison term of nine years on each count, to be served concurrently, and Dubose was designated a Tier III sex offender. Dubose appealed and he assigns the following errors for our review:

I. THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY DENYING HIS CRIM.R. 29 MOTION FOR JUDGMENT OF ACQUITAL [sic] ON COUNT 3 OF THE INDICTMENT AND PERMITTING THE APPELLEE TO AMEND THE BILL OF PARTICULARS IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS.

4.

## II. Law and Analysis

## A. Manifest Weight of the Evidence.

{¶ 10} In his first assignment of error, Dubose argues that the verdict was against the manifest weight of the evidence. He contends that the evidence in support of count three of the indictment consisted of three sentences from S.C. He claims that Dubose's denial of that allegation, and a discrepancy between the date S.C. testified the rape occurred versus the date provided in the bill of particulars, should have been enough for a defense verdict. Dubose submits that the jury's verdict was influenced by other "bad acts" that the jury was permitted to hear. Once such bad act was an uncharged allegation of rape. He also claims that the evidence supporting count one—dismissed because it occurred outside Lucas County—in essence constituted other bad acts evidence which prejudiced him. Finally, he insists that the scientists who testified were unable to negate Dubose's testimony that DNA had been transferred between he and S.C. because they shared a bath towel.

{¶ 11} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the

5.

factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin, 20 Ohio App.3d 172,* 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 13} The jury clearly disbelieved Dubose's "bath towel" explanation as to why his DNA was found in S.C.'s vagina and anus, and why her DNA was on his penis. It believed S.C.'s explanation for the transfer of DNA. We defer to its credibility determination.

{¶ 14} With respect to the discrepancy in dates, S.C. testified at trial that Dubose raped her on her fourteenth birthday. The bill of particulars, however, described that Dubose had raped S.C. on her fifteenth birthday. Dubose confronted S.C. with this discrepancy on cross-examination, and this discrepancy was resolved by the jury. Again, we defer to its credibility determination.

6.

{¶ 15} Finally, with respect to the victim's testimony relevant to count one—which was dismissed because it occurred in Wood County—and evidence concerning a fourth, uncharged rape, we observe that Dubose failed to assign error in the court's evidentiary rulings. He has alleged in this assignment of error only that the verdict is against the manifest weight of the evidence. Accordingly, we decline to address this argument.

{¶ 16} We find Dubose's first assignment of error not well-taken.

### B. The Denial of Dubose's Motion for Acquittal.

{¶ 17} In his second assignment of error, Dubose argues that the trial court erred when it denied his motion for acquittal. Specifically, he claims that the bill of particulars provided by the state specified that the incident described in count three occurred on S.C.'s fifteenth birthday—November 9, 2014. At trial, however, S.C. testified that it occurred on her fourteenth birthday—November 9, 2013. Instead of granting Dubose's motion for acquittal, the trial court granted the state's motion to amend the bill of particulars to conform to the evidence. Dubose contends that this was error.

{¶ 18} We review a Crim.R. 29 motion for acquittal under the same standard used to review a sufficiency of the evidence claim. *State v. Hollstein*, 6th Dist. Lucas No. L-08-1184, 2009-Ohio-4771, ¶ 28. "Accordingly, the relevant inquiry is whether any rational fact finder, after reviewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. (Citations and quotations omitted.) *Id.* With respect to a trial court's decision granting

7.

the state's motion to amend a bill of particulars, however, we apply an abuse-of-discretion standard of review. *State v. Gonzales*, 6th Dist. Wood No. WD-13-086, 2015-Ohio-461, ¶ 52. "[F]or the amendment to constitute reversible error, the defendant must demonstrate that the amendment hampered [his] defense or otherwise prejudiced [him]." (Internal citations and quotations omitted.) *Id.*

Ohio Crim. R. 7(D) provides that a court may "at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." In *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985), the Ohio Supreme Court explained that "[o]rdinarily, precise times and dates are not essential elements of offenses." It further explained that "[a] bill of particulars has a limited purpose -- to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *Id.* Inexactitude as to the time the offense was committed may prove fatal, however, if it "truly prejudices" a defendant from defending himself. *Id.* at 172.

{¶ 19} Here, Dubose was charged with rape, a violation of R.C. 2907.02(A)(2) and (B). The precise time and date of the offense are not essential elements of the offense under the circumstances provided here, where neither the offender nor the victim's age would alter the nature of the offense or the possible penalty. As to the inconsistency between the date provided in the bill of particulars and the date provided by S.C. at trial, Dubose fails to show that he was "truly prejudiced." *See State v. Grewell*,

8.

45 Ohio St.3d 4, 10, 543 N.E.2d 93 (1989) ("Although the defendant could hypothetically have been prejudiced by a variance on counts two and four, the record does not indicate prejudice in this case.") .

{¶ 20} In *State v. Garfield*, 9th Dist. Lorain No. 09CA009741, 2011-Ohio-2606, ¶ 49, the court found that the defendant was not prejudiced in his ability to prepare a defense where the original indictment indicated that the crimes occurred between June 1, 2004, to August 31, 2004, but the court allowed the state to amend it to June 1, 2003, to August 1, 2004. *Id.* at ¶ 49. In doing so, the court pointed out that the defendant did not move for a continuance or to discharge the jury.

{¶ 21} Here, on the afternoon of the first day of trial, defense counsel brought to the court's attention that there was a discrepancy in the date. The state moved to amend the bill of particulars, and the trial court took the matter under advisement overnight, issuing its decision the next morning. Dubose offered no evidence or information indicating that his defense would have differed if he had known earlier that S.C. was claiming that the rape occurred on her fourteenth birthday instead of her fifteenth birthday. He presented no evidence that he had an alibi for November 9, 2013, that he was incarcerated on that date, or any other defense that would have been specific to the date and time. He also did not request a continuance or ask to discharge the jury.

{¶ 22} We also observe that the bill of particulars indicates that the rape on S.C.'s birthday occurred on Packard Street. Dubose testified that he lived on Packard Street from August of 2013 through August of 2014. This is consistent with the offense having

9.

occurred on S.C.'s fourteenth birthday. Dubose testified but offered nothing to counter S.C.'s allegations concerning the incident on Packard Street. We find no abuse of discretion in the trial court's decision to grant the state's motion to amend the bill of particulars to conform to the evidence.

{¶ 23} Finally, we find that the state offered evidence going to each essential element of the offenses. We, therefore, conclude that the trial court properly denied Dubose's motion for acquittal.

{¶ 24} We find Dubose's second assignment of error not well-taken.

### III. Conclusion

{¶ 25} We find Dubose's assignments of error not well-taken, and affirm the June 18, 2015 judgment of the Lucas County Court of Common Pleas. Dubose is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                           _____
                                                          JUDGE
Stephen A. Yarbrough, J.

James D. Jensen, J.                         _____
CONCUR.                                                   JUDGE


                                            _____
                                                          JUDGE